Thank you, Your Honor. May it please the Court, Raymond Lebeshefsky, Your Honors, for Appellate Thidrich Corporation. In our view, this Court presents, this case presents a single, straightforward legal issue. Does Section 113H of CERCLA, that's the Comprehensive Environmental Response Compensation and Liability Act, known in the vernacular as Superfund, does Section 113H of Superfund divest the District Court of Jurisdiction over a pattern and practice constitutional challenge to EPA's administration of its 106 border authority? The District Court determined that 113H did so. We disagree. We believe that the lower court made two fundamental errors when it dismissed the case. The first is it failed to apply the actual statutory text. And the second is it relied on inapposite case law from this circuit, specifically the mess case, which interpreted a provision that's actually not an issue here. In our view, as I said a moment ago, this case is simply governed by the text of the statute. Section 113H actually contains two bars to court jurisdiction. The first bar prohibits the review of, quote, any challenges to removal or remedial actions selected under Section CERCLA, Section 104, close quote. This is the language that this Court interpreted in mess. However, that is not the language that is an issue in our case. There is no for order in our selection, remedy selection in our case, nor is one contemplated. There is a second bar to judicial review in Section 113H. That clause bars the review of, quote, any order issued under Section 106. There is, of course, a 106 order in this case. That's the relevant language. However, Congress chose, as you can tell from the different quotes, different languages to describe the scope of the bar in the very same 113H section. Why do we need to get all twisted up in the legal, in the niceties of whether it's a challenge or whether it's review of an order? We know that review of an order is barred unless certain conditions are met which haven't been met yet. And as I read the heart of your complaint and the heart of the relief slot, in essence, the complaint is EPA has a pattern, systemic policy or practice of jumping the gun when there's not really an emergency and of sitting on certifications when work has been completed. And you seek to invalidate those allegedly unconstitutional procedures and, therefore, the order that was issued in your discrete case, that is, whatever, 2003-11. And just to finish my bottom line, since you've got the full thing out, why isn't that precisely what we're barred or what is barred from judicial review at this point? As Your Honor knows, the D.C. district and potentially the D.C. circuit, depending upon how you read that opinion, found a pattern and practice case could go forward. Well, it's a screwy opinion, for starters. In addressing 113H in exactly these circumstances. And as Your Honor also knows, this Court has allowed pattern and practice cases to proceed in a variety of instances I agree. Where there have been judicial bars. If you go through those cases, the Montes case, the FAA case, in each of them, the individual was subject to some adverse action. In Montes it was an additional requirement for their INS application to be processed. An INS ALJ, Mr. Guajaj, had special additional procedures that some individuals were failing to meet. In the FAA case, an emergency order had been issued by the FAA to pull a mechanic's certification to work on airplanes. In both of those instances, the district courts could not have heard specific requests for relief, judicial review of those decisions. There were jurisdictional bars in the statute. This Court allowed those to go forward because the specific challenges were not to those individual decisions. Counsel, it seems to me, though, that this is really a question of timing. That is what the statute is aimed at. It does not prevent you from seeking eventual judicial review of what has happened to you. I mean, your client, obviously. It says, though, that you have to wait. And the real complaint that you have is, we have to wait. And so does everybody else because these things are delayed and so on and so forth. And they have improperly caused us to be in this emergency category. With all due respect, Your Honor, I disagree. What you have said is true if we were challenging this specific order. What we are challenging is the system that generates orders. That raises some issues of standing, it seems to me. Because if you're challenging what happened to you, you have every kind of standing. Article III standing, prudential standing, statutory right to seek review, everything. When you are now saying, well, we're not actually challenging what's happening to us, but we really don't like the way this law is administered generically, tell me why you have standing even to raise that. We are challenging, Your Honor, what happened to us. What happened to Goodrich was they were a victim of an unconstitutional process. That takes me back to the earlier thing. If you're complaining that you were treated wrongly for whatever reason, whether it was an unconstitutional system or whether it was somebody just didn't understand the science behind it, whatever the reason is, you have an avenue eventually to get there. And if the government refuses to act, I suppose mandamus might lie. I don't know if there's a mandatory duty. That's not actually in front of us. But it seems to me you're blurring the line between complaining about what has happened to you as part of a bigger problem, which is a matter of that you can put into the administrative record, and trying to just complain generically we don't like the way the government runs this operation. No, Your Honor. We have been the victim of an unlawful process by the government, an unconstitutional process by the government. Part of that process has been the specific order. If we were to challenge the specific order, you are correct with regard to the timing bar that we would face. However, we're not. We're challenging the process. Again, I recommend to the Court the FAA case, the INS case, and the other Ninth Circuit cases, all of which have the exact same issue that you're concerned with. No, really, because they're in those cases, or particularly the INS cases, there is no avenue for judicial review ever unless the Court recognizes a pattern and practice  challenge. You've got it. You can do it at the front end of the EPA order, or you can do it at the back end of the EPA order. You just can't do it while the order is in effect and the work is ongoing. Well, we disagree, Your Honor. Yeah, no, that's fine. We think that we can because we are bringing a pattern and practice challenge. But I also, I would also disagree with Your Honor's reading of the INS cases, because as pointed out in those cases, at deportation and at other points, you can challenge the underlying orders. They are, much like Judge Garber said, further on in the process. The Court, the Ninth Circuit cases, the Supreme Court case in McNary that's discussed greatly, appears to be drawing a distinction in those instances where it is saying that if you are challenging an improper system, the specific jurisdiction of bars will do not prevent that. But McNary was classically a case like the one that Judge Reimer is referring to, in which there was never going to be another avenue of relief. And that seemed to me to be central to the reasoning of the Court. Well, if you read McNary, it does speak of the ultimate ability to get relief, the problem that troubled the Supreme Court in dicta was the notion that that would have required the aggrieved immigrant to basically turn themselves over to the IRS. It cannot be true that there is just a generic exception any time someone invokes the phrase pattern and practice, because what that does, I guess I still don't understand the standing to do that, just to come in and say, well, here's a government program I don't like. I guess if I call it a pattern of practice, the Court can take jurisdiction and kind of have a roving commission to go decide if a government is doing a bad job. Actually, that might be a very good idea. Well, it might be, Judge Reimer. It's not what we see here. What we see here, as I said, consistent with the Ninth Circuit prior precedent, is just as in the FAA case, he couldn't challenge the revocation of his license, he set up a challenge to the decision-making process, and the Ninth Circuit said, in that instance, that would be allowed to proceed, and if at the end he, the mechanic was able to prove that the system was profoundly improper, then obviously the fruits of, the bad fruits of that decision could be overturned. The government, on page 35 of this brief, seems to concede that if we were able to ultimately prove that there was a due process problem with the way in which the 106 Porter Authority was implemented by EPA, that that would be a basis for overturning the specific vehicle that is causing injury to Goodrich. But the standing problem, if true, would undermine McNary and all of the other prior. Well, I don't see why, because McNary is not dealing with a situation in which the litigant had a later opportunity, clearly given by statute, to complain about what had happened to it, including but not limited to, as you say, due process violations, the fruits of a systemic problem, or something particular that happened to them. That wasn't what McNary was about. Other than the D.C. Circuit's case, is there any case that you're aware of that permits a generic challenge of the kind that you're trying to bring? Yes, Your Honor. I would read McNary that way. I would read Montez that way. I would read back in some of the other Ninth Circuit cases that way. If I can, I'll reserve my remaining two minutes. Oh, surely. Sam Sankar. May it please the Court, Sam Sankar for the United States. As this Court's recognized, CERCLA gives Goodrich two avenues for raising concerns about the one agency action that has caused him Article III injury, and that's the issuance of the UAO at the Rialto site. Section 113H of CERCLA says first that when Goodrich got that UAO, he could have refused to comply with the order, forced EPA to go to court, and at that point could have raised any challenges it wanted to the order or the procedures by which it was promulgated. Alternatively, of course, Goodrich could have complied with the order, and then at the end of the clean-up process could have asked for reimbursement. If it was denied, it again could have gone to district court to seek reimbursement. In this process, is there in either or both of those situations an opportunity to develop and present the kind of record that Goodrich is seeking that says we're just the victim of a generalized unconstitutional or statutorily improper process? I think that there is certainly the opportunity to say with respect to their UAO that there was an unconstitutional process. Right, but they could bring in the evidence that if their evidence is that there is a policy pattern and practice of doing a bad thing to everybody, including them, can they bring in that evidence, as long as it also includes them? I think it's clear that there's generally a presumption against broad discovery in agency actions that the agency is entitled to a presumption of regularity. They would have to show that there's something missing from the administrative record and there was some need for discovery. I think the cases that govern that, and I should answer your question more directly by saying CERPA does provide for supplementation of the administrative record in accordance with general administrative law principles. And in that way, I think Your Honor has identified the crucial distinction between this case and the other cases on which Goodrich is relying on. Those were cases fundamentally of futility. And some of the cases were facial challenges. But the Montez and McNary cases, that line of cases, is about a situation in which, for example, in McNary, at the end of the rainbow when you finally got your review, you were limited to the record that was created in the very first initial proceeding in which you would never have had a chance to say there was a problem here, I never got X, I never got Y, when I should have. Here, again, there's two opportunities. At the beginning, Goodrich can say, listen, we're not going to comply with this order. And at the end, it can say we shouldn't have had to comply with this order. It was applied to us unconstitutionally. And it's your view that there is an opportunity in those court proceedings to supplement the record that was, because otherwise the agency would have the ability to forever insulate its activity from review by limiting what's in the administrative record, and then you'd be back in the soup in the McNary sense. I understand. I believe it's Section 113J or K, and I'm not sure exactly which one it is, of CERCLA, that allows for supplementation of the administrative record. Furthermore, the administrative record is open to comment by the parties, by parties not just including Goodrich, by other parties as well. They're entitled to say, to put materials into the administrative record to say we think there's a problem here. And in addition, I submit to you it's within the district court's judge's discretion if there is a strong showing of improper behavior or bad faith, a facial showing of that, then, yes, it's possible that in some cases there might be limited discovery available to look at what specifically happened to Goodrich. I do think it's worth looking at what Goodrich's claims are. Judge Romney, you pointed out the heart of their claim is essentially a claim that there is an imminent and substantial or that EPA is misapplying the imminent and substantial endangerment criterion. That is a claim that Goodrich has standing to raise, but only with respect to itself. It can say the Rialto site didn't present an imminent and substantial endangerment. What it can't do is ask a Federal court to act as a review panel to say let's look at the way EPA is administering the statute everywhere, specifically disclaiming our site. Is that true with the delay prong of their argument? It seems to me they had two assertions. One was the one that you have just talked about, which is emergency will not exist. But the second is, we'll forestall the opportunity for review at the end by never letting it end. I commend you that Judge Posner's decision in Employers Insurance of Wausau, in which he talks about precisely that problem. And he says, first of all, when you ask for reimbursement from EPA, if EPA never responds to you, then you could potentially bring collateral action into the EPA and say this is agency action unlawfully withheld. I'm not challenging the order. I'm challenging the failure to respond to my reimbursement request. But Judge Posner suggested that you could even just bring a reimbursement suit. EPA would then say, well, you haven't cleaned up the site yet. And that would, that factual finding would matter for the jurisdictional bar, but the court would be able to look and see whether the cleanup was actually completed. And again, I gather your position is they have standing not generically as an interloper everywhere, but only with respect to any potential delay in certifying their own site. That's right. And Your Honor brings up a nice ripeness problem here. Goodrich has not said that it's finished with its cleanup. It hasn't asked EPA to reimburse it. And there's a real ripeness problem with allowing it into court to say we think EPA generically doesn't deal well with the end of the, with the end of the cleanup process, when they're not even asserting that they've reached the end of their cleanup process at all. That's, you know, Reno v. Catholic Social Services, which is in this line of primary cases, makes clear that those cases don't put aside constitutional standing principles, constitutional ripeness principles, where there is an avenue for judicial review. And in many of those cases, there was only one avenue. Here, there's at least two. There's no pattern and practice claim authorized. Now, if this Court were to allow pattern and practice claims to go forward generically, this would work, I think, a pretty substantial change in the way that plaintiffs, the Federal courts, and the government interact. At that point, for example, if you were audited by the IRS, you could defend by saying, well, I'm not sure about my particular audit, but I think the IRS is engaging in a broad pattern of practice and misconduct. No. The way you do it is you say I was deprived of due process. You may benefit third parties as a result of the holding in your case, but you have to be adjudicating your own rights. And that's important here. We can see the results of this in the GE v. Johnson and now Jackson case out in the District of Columbia. The trial court did proceed to judgment on that case, you know, relying on, I think, what Your Honor has characterized as a goofy case. Your words, not mine. Well, you don't seem to be squawking very hard about that characterization. I'm sorry? You're not squawking very hard about that characterization. I expect I'll – I don't want to put any words in the record that will be repeated to me in front of the D.C. Circuit this fall. But the court did proceed to judgment, and we saw the result. Two years of discovery, a million dollars in costs for the agency in dealing with that discovery, a draft of documents, huge amounts of discovery disputes. And at the end of the rainbow, of course, EPA was, you know, EPA won. But that really doesn't help EPA because, of course, this is not like a facial challenge, like the Mace case, the aircraft case that counsel keeps referring to, or the Johnson v. Robeson case, the Veterans Benefits case. Those are facial challenges. So when a court says the regulations are constitutional or the regulations are in accordance with law, other parties don't get to say, well, we want to challenge it, too. Or at least if they do, you have a quick judgment. You say, no, that issue's already decided. As I understand it, Goodrich filed a 28-J letter just yesterday in which they said, look, we're not bound by that D.C. case. Two years of discovery, all those documents, all that production. This is a factual dispute. We get new discovery to find out more about this pattern of practice. It would be amazing to think that Congress somehow in Section 113H meant to authorize this, let alone that it bypasses the general principles of standing. I do want to speak briefly to the statutory text. I recognize that Your Honor has said and the Court agrees that we don't need to really reach the Court. The government agrees that we don't really need to reach that statutory text. I do want to point out one thing in particular. Goodrich has said that there are some differences in the front and back end of that statutory provision. I commend to you footnote 1 of Goodrich's reply brief, however, in which they say the government said we expect you to mean that pattern of practice claims can't go forward for these 104 actions. And Goodrich said, oh, no, no, wait a minute. No, we're not saying that. So it's pretty clear that they don't think that the textual difference in the front and back end of Section 113H means anything. And that's the government's position as well. If you look at the legislative history, if you look at other portions of the statutory text of CERCLA, you'll see that Congress meant generally to prohibit these kinds of actions. And, in fact, in this Court's decision in Fairchild, it said, and I'm quoting here, Section 113H's preenforcement review provision governs all actions arising out of CERCLA. This is an action arising out of CERCLA. It's hard to see how 113H wouldn't bar it, even if there were a standing. Finally, I do want to talk briefly, again, about some of those cases that Goodrich is relying on. Number one, McNary. And I think McNary has to be understood. Judge Graber, I think you pointed this out. In light of the specific circumstances there, the government had conceded that there was a pattern of pervasive violations of individual constitutional rights and was solely relying on the statutory bar. And the Court said, look, this is a situation in which if we foreclose pattern and practice review, that means it's the end of the story for these folks. And even though Goodrich cited one point in one Ninth Circuit opinion in which the Court said that some part of that discussion might have been dictum, but if you look at Reno v. Catholic Social Services, Shalala v. Illinois Council, you'll see repeatedly the Supreme Court going back to the futility, going back to saying that that's an important part. Similarly, this Court in the Ortiz v. Meissner, Naranjo Aguilera cases has said, has consistently interpreted the scope of McNary by looking at the futility provisions. There's no further questions, Your Honor? No, I don't think so. Thank you. Thank you, Your Honor. I'll be very brief. With respect to McNary, I invite the Court to the end of page 496 and carry on to 497, where the Court talks about the fact that direct review would be available, but it's at the deportation stage. And as Counsel for the Government mentioned, the Ninth Circuit has said in the past that that discussion was dictum and it was a statutory plain text discussion that ruled McNary. But I think the — to step back and to think of the concern on a broader scale, I'd like the Court to read the facial challenges to section 106, Reardon and others. And in each of those cases, what happens is the Court determines that the 106 authority is constitutional, that it's constitutional for all the protections that this panel has highlighted. You can ultimately get review and it's only supposed to be used in emergency circumstances, et cetera. And as you see throughout the cases, Raytheon, this case, GE, the parties that are actually the subjects of these orders know that that's not the way EPA implements them. They circumvent those protections. So they protect themselves from the facial challenge by the provisions of the statute. They then deliberately circumvent them, claim that there's no pattern and practice challenge, and put us to the ultimate — I don't understand why it matters whether there's a pattern and practice. As far as your client is concerned, what matters to your client, it seems to me, is whether it has to do this cleanup and pay for it. And you have the opportunity at the beginning or at the end to say this order was wrong for any number of reasons, either it wasn't our fault, somebody else's fault, or there's this deprivation of due process because of X, Y, and Z. I don't understand why it matters that companies 1 through 27 somewhere else have had a problem. Because it would establish a pattern to circumvent the due process that my clients are entitled to under the circumstances. Well, but that's your due process claim, which you can prove in your case. I don't understand why it matters if somebody else has had the same problem, other than as it bears on that you've had this problem, which you can do when the time is available. Again, Your Honor, if that were the analysis, then wouldn't McNary and all the other cases come out the other way? You could prove at deportation that you were the subject of an unconstitutional denial of your SAW application because you can't. But you can't because you have to go to deportation. Anyway, Your Honor, my time is in essence up, but I'm happy to answer any questions. Thank you. Thank you, counsel. Both of you, I appreciate the argument. And the matter just argued will be submitted. The Court will stand in recess for the day.
judges: Rymer, Graber, Aldrich